UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                      Case No. 02-CR-66

JOEL RHODES,

      Defendant.

ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S
MOTION TO EXCLUDE OR REDACT PROFFER LETTERS OF COOPERATING
GOVERNMENT WITNESSES (DOC. # 247).

Pending before the court is the defendant's Motion to Exclude or Redact Proffer Letters of Cooperating Government Witnesses (Doc. # 247). For the reasons explained herein, the court will grant in part and deny in part the motion.

## Summation of the Parties' Arguments

According to the defendant, a substantial part of the government's case-in-chief involves testimony from individuals with a criminal history who made the decision to cooperate with the government pursuant to an agreement.[1] (Motion ¶ 2.) The defendant states that before these persons entered cooperative agreements, the government asked each to execute a proffer letter memorializing their understanding of how the required debriefing process would occur. (*Id.*) Further, the defendant submits that these letters "contains no less than five separate references to the requirement that each [cooperating witness] provide

---

[1] These individuals are Tavares White, Kendrick Jones, Henry Hall, Jerry Versey, Lavelle Walker, Johnny Winston, Morris Jones, Charles Bishop, Donnell Carter and Michael Chachere. (Motion at 2-3.)

truthful information."[2] (*Id.* ¶ 4.) In light of this repetition, the defendant argues that the cumulative effect of the statements "bolster[s] the credibility of the witness in the eyes of the jury." (*Id.* ¶ 11.)

Additionally, the defendant contends that two pieces of correspondence sent from a Milwaukee County Assistant District Attorney to an attorney representing one of the cooperating witnesses contains two references concerning that witnesses' duty to render truthful information to law enforcement and at trial, as well as the plea agreement the state reached with the witness in exchange for his overall cooperation.[3] (*Id.* ¶ 7.) Lastly, the

---

[2]The specific statements at issue are as follows:

    a.    The government requires a completely truthful statement from your client and the disclosure of all documents and other materials which relate to the subject matter of the interview.

    b.    Because we may use the information provided by your client to decide whether other individuals should be charged in this or related investigations, it is important that your client provide accurate information.

    c.    In exchange for your client's truthful statement, the United States agrees not to use any information furnished by your client during the interview directly against him in any civil or criminal proceedings, subject to the following conditions and exceptions.

    d.    Third, should this office determine that your client has given false, incomplete, or misleading information, any and all of his statements may be used against him in a prosecution of perjury, obstruction of justice, or making a false statement.

    e.    Therefore, it is important, for your client's own sake, that he provide complete and truthful information during the interview.

(Motion, at 2-3.) These exact statements appeared in all but two of the ten cooperating witnesses. *See id.*. Donnell Carter's proffer letter did not include statement "(e)" and Michael Chachere's proffer letter is missing language delineated in "(b)" and "(e)." (*Id.* at 3.)

[3] In a letter dated July 22, 2002, the following statements appear:

    a.    If Mr. Bishp does choose to cooperate with law enforcement

defendant objects to the language in one of the communications advising the cooperating witness that the state would require him to take a polygraph as to any information he provided because the United States Court of Appeals for the Seventh Circuit has found this evidence inappropriate. (*Id.* ¶ 15.)

The government begins its response by noting that the "[a]dmission of the proffer letters at trial is standing operating procedure in this district." (Response at 1.) Although the government offers that truthful language in these letters could appear to bolster a witness' credibility, the government claims that "[a] skillful defense attorney, . . . will often point out on cross examination that the witness signed the letter and then proceeded to provide information that was, arguably, neither complete nor (at least in part) truthful." (*Id.*)

>   authorities, any information or testimony he provides must be truthful and complete.
>
> b.  Any false, misleading or incomplete information or testimony would subject Mr. Bishop to possible prosecution for perjury, obstructing, or false swearing.
>
> c.  Mr. Bishop must be willing, if requested, to take a polygraph regarding any of the information which he may provide.
>
> d.  If the state determines that any information by Mr. Bishop is intentionally false, misleading, or incomplete this offer is void.

(*Id.*) The second communication contains the following statements:

> e.  The state is willing, and hereby offers, to not prosecute Mr. Bishop for any crimes, except any homicides, about which he fully and truthfully informs law enforcement officers.
>
> f.  As stated in that letter (i.e. letter of July 22), if the state determines that any information provided by Mr. Bishop is intentionally false, misleading, or incomplete, this offer is void and the state would be free to prosecute Mr. Bishop for any appropriate charges, using Mr. Bishop's statements against him.

(*Id.* at 3-4.)

3

Should the court decide not to permit the government to introduce the proffer letters during direct examination and the government does not have the opportunity to advise the jury of the incomplete nature of the subsequent debriefing, the government anticipates that the defense will move the court to admit the proffer letters during cross examination. (*Id.* at 1-2.) But if this occurs, the government contends that it "can be accused of, and will appear to be, hiding the ball from the jury." (*Id.* at 2.) Consequently, out of fairness, the government asks the court to prevent the defense from admitting or referencing the proffer letters during cross examination or defense case. (*Id.*)

The defendant takes issue with the government's request that the court should prohibit the defense from referencing the proffer letters during cross examination of the government's witnesses. (Reply at 3.) According to the defendant, his objections to the numerous references in the proffer letters that the cooperating witnesses provides truthful information, does not mean he forfeits his Sixth Amendment right to confront the witness. (*Id.*) In other words, the defendant submits that because he "has a right to engage in legitimate cross-examination of the government's cooperating witnesses by exploring the agreement each has with the government and how that agreement came into being[,]" the court should permit him to question "the witness concerning the proffer agreement, the debriefing process, and the plea agreement." (*Id.*) Consequently, the defendant maintains that the appropriate remedy is "either exclude the proffer letter from evidence and direct that the government rely on oral testimony to summarize their contents minus the objectionable repetitive references to the requirement of truthfulness on the part of the witness or to redact the proffer letters prior to introduction." (*Id.*)

4

Discussion

In *United States v. Thornthon*, 197 F.3d 241 (7th Cir. 1999), the defendants appealed the district court's decision to admit into evidence the government's proffer letters to the cooperating witness. *United States v. Thornthon*, 197 F.3d 241, 251 (7th Cir. 1999). In reviewing this evidentiary decision to determine whether the district court abused its discretion, the Seventh Circuit found that the proffer letters for the nine cooperating witnesses made three references to truthfulness. *Id.* at 251. The Seventh Circuit acknowledged that the defense has "every right to attack the credibility of witnesses who get deals," but also noted that "the prosecution is entitled to get into evidence the fact that the deals are conditioned upon truthful testimony." *Id.* at 252.

According to the Seventh Circuit, during direct examination the prosecution may garner testimony regarding the plea agreement and the proffer letter and actually introduce them into evidence. *Id.* But "the admission of these agreements does not constitute government vouching for the credibility of the witnesses." *Id.*; *United States v. Lewis*, 110 F.3d 417, 421-22 (7th Cir. 1997) (district court's decision to admit the proffer letters and the plea agreement was not an attempt to enhance the witnesses' credibility and that the court's instruction to the jury should have dispelled any harmful effects). The plea agreement and the proffer letters merely outline the terms and conditions of those agreements and because each side can offer competing inferences, the jury's role as an independent factfinder is not undermined. *Id.*

5

Notwithstanding this holding, the Seventh Circuit offered "some words of wisdom to the wise." *Id.* In affirming the district court's decision in *Thorton*, the Seventh Circuit advised that

> [t]his decision should not be read as an enthusiastic endorsement for the admission of all proffer letters and all plea agreements at all times and in all places. We approve the admission in this case in light of the judge's jury instructions and in light of the overwhelming evidence that would render any erroneous admission harmless. But for more than a decade we have been warning prosecutors to "avoid unnecessarily repetitive references to truthfulness if it wishes to introduce the agreements into evidence." Three references to truthfulness in the proffers letters and five references in the plea agreements comes perilously close to being unnecessarily repetitive. If these seemingly duplicative statements are essential to airtight immunity and plea agreements, prosecutors should consider refraining from introducing the documents into evidence and rely instead on testimony summarizing the agreement. If prosecutors want to introduce the actual documents into evidence they should ease up on multiple references to the necessity of the complete and truthful testimony.
>
> The admission of the proffer letters, in particular, strikes us as overkill. The plea agreements' references to truthfulness were repetitive enough-- admitting the proffer letters, with their own repetitive references to truthfulness, compounded the problem. The government confidently states that "while the immunity letters and plea agreements contained similar language concerning truthfulness, they were executed at different times and fulfilled distinct purposes." But this does not explain what distinct evidentiary purpose the admission of the proffer letters served at trial. The plea agreements explained the conditions under which the cooperating codefendants were testifying. The proffer letters, which memorialize the framework under which the codefendants agreed to talk in the first place, seem of scant relevance at trial when a subsequent, superseding plea agreement has been reached. There may come a day in another case when we find excessive the admission of proffer letters containing repeated references to honesty. The government may wish to think twice before risking reversal for the presumably minimal benefit achieved by the admission of these documents.

6

*Id.* at 252-53 (internal citations omitted).

A year later, in *United States v. Collins*, 223 F.3d 502 (2000), the Seventh Circuit had the opportunity to revisit this very same issue. Collins argued that the district court committed an error by allowing the prosecution to move into evidence the cooperating and plea agreements for ten government witnesses "because it impermissibly enhanced the credibility of the witnesses in the jury's eyes." *Collins*, 223 F.3d at 510. Again, the Seventh Circuit affirmed the trial court decision and offered more admonitions.

> Although the government may present evidence about its witnesses' plea agreements and their concomitant obligations to be truthful, the district court should not permit the government "unnecessarily repetitive references to truthfulness." However, we held in *United States v. Thornton*, 197 F.3d 241, 252 (7th Cir. 1999), that it was not an abuse of discretion to admit plea agreements containing even more numerous references to truthfulness than in the agreements admitted here. The agreements in *Thornton* required "full, complete and truthful information and testimony" from the witnesses, reserving the government's right to withdraw the plea agreement and prosecute for perjury if the witness testified falsely. We found that the agreements, plus proffer letters with similar terms, "merely laid out the terms and conditions of the agreements" and "the jury's role as independent fact finder was not undermined." Admission of the plea agreements for the government's witnesses in this case was not an abuse of discretion, and as in *Thornton*, the court's cautionary jury instructions removed potential prejudice by directing the jury to consider the government witnesses' testimony "with caution and great care." Remember, however, that *Thornton* reproved prosecutors for coming "perilously close to being unnecessarily repetitive" and to "think twice before risking reversal." Collins's trial preceded *Thornton's* admonitions, and the government promised at oral argument that it had modified its trial *modus operandi* since *Thornton.* We expect to see appropriate adjustment to the government's practice in subsequent cases.

*Id.* (internal citations omitted).

This motion requires the court to reconcile competing interests. On the one hand, these admonitions persuasively convey the Seventh Circuit's position on the issue. On the other, the law still allows the government to move the proffer letters and plea agreement into evidence despite the repeated mandates upon the cooperating witness to render truthful information. However, it appears that the reconciliation of these position hinges on each side's ability to take the witness' testimony and offer competing inferences, the overwhelming weight of the evidence that would render any erroneous admission harmless and the impact of the court's instruction to the jury concerning their roles as the sole judges of the witness' credibility.

Here, the defendant is not attacking the government's right to advise the jury that its deals with cooperating witnesses are conditioned upon each witness rendering truthful testimony. Instead, the defendant sees repetitive references to witnesses' agreements to testify truthfully as vehicles used by the government to vouch for the cooperating witness' credibility.

The law in this circuit expressly forbids two types of vouching. *United States v. Renteria*, 106 F.3d 765, 767 (7th Cir. 1997). A prosecutor may not express her personal belief in the truthfulness of a witness, and a prosecutor may not imply that matters not presented to the jury support a witness' credibility. *Id.* Although the defense argues that the signature of the government's attorney on the proffer letters means he is vouching for the cooperating witness, this is not the case. By signing his name to the proffer letters, the government's attorney is not violating either rule. Instead, the signature on the proffer letters, of the Assistant United States Attorney as the government's agent, serves only to contractually bind the government to the agreements.

8

*Thornton* suggests that if the repetitive language in the agreements are necessary, the government should elicit testimony from the cooperating witnesses about the terms of their agreements in a non repetitive fashion. However, implementation of this suggestion requires balancing another set of competing interests. If the court does not allow the government to move the proffer letters into evidence during direct examination and allows the defense to seek their admission, the effect may lead the jury to believe that the government is hiding something. Not to mention that such a rule would "leave gaping holes [for the prosecutor] to be poked at by his opponent." *United States v. Lewis*, 110 F.3d 417, 421 (7th Cir. 1997). But if the court likewise forbids the defense from seeking admission of the proffer letters during cross examination, after the government elicited testimony regarding the same during its direct examination of the cooperating witness, this ruling would have a potential negative impact on the defendant's Sixth Amendment right to confront the witness.

Consequently, the court will deny the defendant's motion to exclude the proffer letters. Notwithstanding this decision, the government must heed the Seventh Circuit's admonitions and redact language in the proffer letters requiring the cooperating witness to provide truthful information to the extent that the government believes it is reasonable to do so.

Lastly, *United States v. Bursten*, 560 F.2d 779 (7th Cir. 1977) clearly states the Seventh Circuit's position with respect to the language in a plea agreement requiring the cooperating witness to submit to a polygraph. There, the court stated, that "[g]iven the awesome powers which the prosecution may wield in order to insure the veracity of its witnesses' statements, we strongly condemn this superfluous practice. Prosecutors who introduce such evidence in the future to obtain convictions should expect reversal." *Bursten*,

9

560 F.2d at 785. Accordingly, the defendant's request to redact the polygraph reference in the July 22, 2002 letter from the Milwaukee County ADA to one of the cooperating witnesses' attorney is granted.

Now, therefore,

IT IS ORDERED the defendant's motion to exclude or redact the proffer letters is denied without prejudice.

IT IS FURTHER ORDERED that the defendant's motion to redact the polygraph reference in the July 22, 2002, letter from the Milwaukee County ADA to one of the cooperating witness' attorney is granted.

Dated at Milwaukee, Wisconsin, this 28th day of June, 2005.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge