UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

   Plaintiff,

  v.                   Case No. 02-CR-66

JOEL RHODES,

   Defendant.

ORDER DENYING WITHOUT PREJUDICE THE DEFENDANT'S MOTION
IN LIMINE TO EXCLUDE FROM EVIDENCE AT TRIAL "OTHER EVIDENCE"
PURSUANT TO RULE 404(b) (DOC. # 245).

  Pending before the court is the defendant's Motion in Limine to Exclude From Evidence at Trial "Other Crimes Evidence" Pursuant to Rule 404(b) (Doc. # 245). The government filed its response (Doc. # 269) and the defendant filed a reply (Doc. # 273) as well as its Rule 404(b) notice (Doc. # 277). For the reasons explained herein, the court will deny the motion without prejudice.

### Summation of the Parties' Arguments

  **A. The Defendant's Motion**

  The defendant anticipates that at trial the government will seek the admission of other acts evidence involving seven different offenses. (Motion at 1.) These offenses consist of (1) the March 10, 2002, alleged robbery of Kim Johnson, (2) various homicides, (3) an arson at the After Hours Club on February 3, 2001, (4) an attempted robbery of ATM funds, (5) an armed robbery at 2664 North 55th Street on October 13, 2000, (6) February 26, 2001, sexual assault allegations and (7) a November 20, 1999, burglary of Charles Reynold's home. (*Id.* at 1-13.) Relying on Rules 404(b) and 403 of the Federal Rules of Evidence, the

defendant moves the court for an order that precludes the government from introducing at trial evidence concerning all seven of the alleged crimes and conduct because he claims that they are unrelated to the offenses delineated in the indictment. (*Id.* at 1.) Additionally, the defendant contends that because these other crimes and conduct are not "intricately related" to the conduct charged in the indictment, they are inadmissible. (*Id.*)

### 1. The March 10, 2002 Alleged Robbery of Kim Johnson

According to the defendant, his review of discovery materials did not produce any information suggesting a connection between Kim Johnson and the Ghetto Boys' alleged drug activity. (*Id.* ¶ 20.) Consequently, he proffers that the government cannot argue that this offense allegedly committed by him and another individual is "'part and parcel' of the Ghetto Boys drug trafficking conspiracy[,]" that the conduct amounts to the "'means and methods' of successfully furthering the conspiracy[,]" and that the offenders intended or used the money they allegedly procured from Kim Johnson to further the conspiracy. (*Id.*) This robbery offense, the defendant submits, is not "intricately related" to the conspiracy, does "nothing to 'complete the story' of the drug conspiracy[,]" and its exclusion would not "create any sort of 'chronological or conceptual void' in the government's proof." (*Id.* ¶ 21.) Instead, the defendant proffers that the government seeks to admit this evidence contrary to Rule 404(b) for purposes of showing his propensity to commit crimes. (*Id.* ¶ 22.)

In the event the government seeks to move this alleged offense into evidence, the defendant states that the government must first "identify a legitimate purpose for its introduction." (*Id.*) However, the defendant submits that this evidence is irrelevant and that the government will fail in its quest to satisfy Rule 404(b)'s threshold requirement for admissibility. (*Id.*) Alternatively, the defendant contends that if the government meets the

2

burden, the evidence should be excluded because it is unfairly prejudicial and would violate Rule 403's admonition that the proponent not waste time or cause an undue delay. (*Id.* ¶ 23.)

### 2. Various Homicides

Because the government's trial brief fails to articulate "the legitimate purpose for which" the government would seek to introduce the homicides of Larry Wallace, John Brookshire and Harry Powell, the defendant argues that the government's intention is unclear. (*Id.* ¶¶ 25, 27.) According to the defendant, his "indirect involvement in these homicides, if any, ranges from ambiguous to highly speculative" and that the discovery materials fail to disclose any relationship between the homicides and the conspiracy. (*Id.* ¶¶ 26, 28.) Also, the defendant submits that the homicides are the product "of some motivation quite apart from furthering the conspiracy[,]" thereby rendering them "neither part and parcel of the conspiracy nor intricately related to it." (*Id.*)

Additionally, the defendant contends that Rule 404(b) would preclude the government from seeking admission of the homicide evidence and that this evidence would not satisfy Rule 403(b) because "it is difficult to envision a more prejudicial piece of other crimes evidence than a homicide." (*Id.* ¶ 29.) Furthermore, the defendant asserts that this evidence would involve an undue delay and a waste of time. (*Id.* ¶ 30.)

### 3. The February 3, 2001 Arson at the After Hours Club

The defendant states that the discovery materials reveal that on February 3, 2001, members of the Milwaukee Police Department (MPD) executed a search warrant at the parking garage/building that he allegedly rented to use as a club and discovered approximately fifty people socializing inside the premises. (*Id.* ¶ 34.) According to the defendant, the government believes that some of these individuals were members of the

Ghetto Boys and that once MPD departed, the defendant ordered the members to set the club on fire.  (*Id.*)

In support of his request to exclude evidence concerning the arson, the defendant argues that the arson "in no way constitutes any act in furtherance of the" alleged conspiracy, is not relevant "to any issue associated with the indictment[,]" is not "intricately related to the alleged drug conspiracy[,]" is "not needed to 'complete the story of the crime on trial[,]'" and its exclusion would not create any "chronological or conceptual void" in the government's case.  (*Id.* ¶ 35.)  The defendant also offers that the government's trial brief fails to establish the relevancy of this information and that it is being offered for reasons other than to show the defendant's "propensity to commit crimes."  (*Id.* ¶ 36.)  Relying on *United States v. Joseph*, 310 F.3d 975 (7th Cir. 2002), the defendant argues that the evidence concerning the arson offense is not similar to the indictment's charges or conduct and because the government must first prove that the defendant took part in the arson, this requirement could lengthen the trial.  (*Id.*)  Should the government successfully meet this burden, the defendant argues that the concerns articulated in Rule 403 would preclude the government from seeking the introduction of this evidence.  (*Id.* ¶ 37.)

### 4. The Attempted Robbery of ATM Funds

The government's trial brief, the defendant notes, indicates that the government will seek to admit testimonial evidence from cooperating witnesses concerning an alleged plot to rob an individual employed to deliver money to an ATM machine in Milwaukee County.  (*Id.* ¶ 38.)  Again, the defendant challenges the relevancy of this information and the relationship between the alleged robbery and the charged conspiracy.  (*Id.*)  Like the cooperating

witnesses, the defendant proffers that this offense was "separate and distinct from the conspiracy charged in the indictment." (*Id.* ¶ 39.)

### 5. The October 13, 2000 Armed Robbery at 2664 North 55th Street

The defendant states that two cooperating witnesses admitted that they entered a home on 2664 North Street in Milwaukee and used a gun to rob a person of money that had been designated to pay that individual's daycare employees. (*Id.* ¶ 40.) These cooperating witnesses, the defendant offers, implicate him in this robbery. (*Id.*) For the same reasons offered in the offense involving the attempted robbery of ATM funds, the defendant concludes that this evidence is not admissible. (*Id.* ¶ 41.)

### 6. The February 26, 2001 Sexual Assault Allegations

Next, the defendant submits that the discovery materials contain several police reports concerning sexual assault allegations the police received from a purported victim. (*Id.* ¶ 42.) The reports indicate that a woman accused the defendant and other individuals of kidnaping and transporting her to another location and then forcing her to engage in various acts of sexual intercourse. (*Id.*) During a search of the residence where the offense supposedly occurred, the police officers seized a video recorder, a video tape of the alleged offense, marijuana, a handgun and a digital scale. (*Id.* ¶¶ 42, 43.) After reviewing the video tape, the police officers concluded that the sexual acts engaged in by the woman were consensual. (*Id.* ¶ 42.) When the police confronted her, she recanted her earlier statements and admitted that she lied. (*Id.*)

Although the government's trial brief does not include this episode, the time line notes that police officers conducted a consent search, which produced marijuana, a handgun

5

and a digital scale. (*Id.* ¶ 43.) Consequently, the defendant believes that the government will seek to introduce into evidence their findings. (*Id.*) In light of the alleged victim's recantation, the defendant offers that the court should exclude "any and all references to the kidnaping and sexual assault allegations." (*Id.* ¶ 44.) But should the court conclude that the "consent search and its fruits are an appropriate subject for testimony, [the] defendant would ask that the government's case be tailored in such a way as to avoid all reference" to the alleged victim and her original accusations. (*Id.*)

### 7. The November 20, 1999 Burglary of Charles Reynolds' Home

The defendant offers that the discovery materials include police reports concerning a burglary of firearms from Charles Reynolds' home. (*Id.* ¶ 45.) According to the defendant, the government believes that the defendant took part in the burglary. (*Id.*) During the execution of a search warrant at a residence at 2063 South 5th Street, in Milwaukee, MPD discovered a firearm taken from Reynolds' home. (*Id.*) The defendant notes that some witnesses identified this residence on 5th Street as a drug house operated by Jerry Versey and that when law enforcement officials arrested Kendrick Jones, a government witness, he possessed a firearm that had been taken from the Reynolds' home. (*Id.*) Because the government references this offense in both its time line and trial brief, the defendant concludes that the government will refer to this offense at trial. (*Id.* ¶ 45.)

Although "the defendant concedes that Seventh Circuit case law permits the admission of evidence that the defendant and other alleged members of the Ghetto Boys were at one time or another arrested in the possession of firearms[,]" he proffers that this proposition does not mean that the burglary, the source of the firearms, is automatically admissible. (*Id.* ¶¶ 47, 48.) In support of this conclusion, the defendant argues that the

6

burglary is unrelated, not intricately related to the drug conspiracy and that its absence would not create "any kind of 'chronological void.'" (*Id.* ¶¶ 48, 49.)  Lastly, the defendant offers that because the government will offer other testimony concerning other sources the members used to secure firearms, the defendant contends that evidence regarding the Reynolds burglary is prejudicial and cumulative as well and that this is "an important factor when balancing the probative value/prejudicial impact of other crimes evidence . . . under Rule 403." (*Id.* ¶ 49.)

### B. The Government's Response

As to the various homicides, the arson at the club and the sexual allegations, the government states that with exceptions, it will not introduce evidence concerning these three acts. (Response at 1.)  With respect to the homicides, the government submits that it "has no intention of seeking to admit evidence tending to prove that Joel Rhodes had any involvement in any of the homicides." (*Id.* at 2.)  Instead, the government offers that the witnesses' "timing of events is often in relation to a death or other significant event in the life of the group." (*Id.*)  In other words, "a witness may testify that after [John] Brookshire was killed, the group moved its drug house to South 5th Place in Milwaukee, or after Ricky Blackmore was killed . . . , the group moved its drug house to North 28th Street." (*Id.* at 1-2.)  Additionally, the government advises that it will introduce into evidence the defendant's statements to MPD following the Blackmore homicide admitting his membership in the Ghetto Boys and his subsequent statements concerning his leadership position after the Powell murder. (*Id.* at 2.)

With respect to evidence concerning the sexual assault, the government notes that it will seek to introduce evidence that links the defendant to the location of the alleged

assault and to inform the jury that the search produced marijuana, a digital scale and a handgun. (*Id.*) But the government highlights that it will not seek to prove the assault or advise the jury that the police were at the residence investigating an assault allegation. (*Id.*) As to the arson at the club, the government contends that it "may seek to use the event . . . to establish a time frame for the government's witnesses, but it will not seek to introduce evidence that Rhodes had a role in the arson." (*Id.*)

Because "the evidence of the Reynolds burglary and the subsequent recovery of guns and ammunition from the Reynolds burglary is a centerpiece of the government's case against Joel Rhodes, both as to the conspiracy charged in Count I but also as to the firearm charge in [C]ount II[,]" the government will seek the introduction of this evidence at trial. (*Id.* at 3.) In support of this conclusion, the government highlights that the Reynolds "burglary is inextricably related to the crimes charged in the indictment." The government explains that paragraph seven of Count One charges that the Ghetto Boys procured the firearms through various means including burglaries to protect themselves and the proceeds of their drug trafficking activities. (*Id.* at 3-4.) Furthermore, Count Two contends that the defendant and his co-conspirators possessed firearms. (*Id.* at 4.)

At the time of the armed robbery at the daycare, the government offers that the defendant led the Ghetto Boys, including three of the government's witnesses, on a series of armed robberies. (*Id.*) The government asserts that most of these robberies involved drug dealers, which provided the offenders with an opportunity to obtain drugs which the robbers divided and sold in addition to money that they used to procure more drugs. (*Id.*) Because the armed robbery at the daycare and the robberies involving the drug dealers occurred during the same time frame, involved the same members of the Ghetto Boys and were led

by the defendant, the government concludes that the armed robbery at the daycare is inextricably related to the drug robberies outlined in paragraphs four and five of Count One. (*Id.*) Furthermore, the government submits that the armed robbery at the daycare "both completes this picture of the Ghetto Boys' organization and demonstrates Rhodes' leadership role in the group." (*Id.*)

According to the government, evidence of the attempted robbery of an ATM driver, Johnson's robbery and arguably the arson at a club demonstrate the defendant's leadership role in the organization. These offenses involved the same people. Further, law enforcement's intervention in the attempted ATM robbery led to the arrest of one of the government's witness whose cooperation provided information that supported the issuance of a search warrant for the defendant's home. (*Id.* at 4-5.) Moreover, the government argues that "[t]he sequence of events relating to these attempts to rob an ATM driver supports the allegations at paragraph six of Count One of the Indictment, that the Ghetto Boys enforced participation and solidarity through acts of violence against others as well as against members of their own group." (*Id.* at 5.)

With respect to the robbery of Kim Johnson, the government does not place value on the robbery itself, but on the FBI recorded conversation between the defendant, Johnson and Michael Chachere, a government informant. (*Id.*) In this conversation, the government notes, the defendant's statements corroborate the testimony the government's witnesses will offer at trial concerning the defendant's control over the Ghetto Boys members and his role in the drug enterprise. (*Id.* at 6.) Additionally, the government suggests that in the recorded conversation, the defendant admonishes Johnson for not looking out for the [Ghetto Boys] family, and admits that he had control of the other members and had kept the

9

members of his "circle" from robbing the Ghetto Boys' drug sources and Johnson's associates. (*Id.* at 5-6.)

### C. The Defendant's Reply

Based on the defendant's reading of the government's response, he concludes that the government removed the homicides, the arson at the club and the sexual assault allegations from its list of potential material under Rule 404(b). (Reply ¶ 14.) With respect to the armed robbery at the daycare, the defendant continues to maintain that the government's arguments do not justify admissibility. (*Id.* ¶ 15.) Because the government admits that it has direct evidence of the defendant's involvement in a series of armed robberies, the defendant asks "why the government would then insist on introducing evidence of a non drug-related armed robbery to prove the same point of" the defendant's leadership. (*Id.*) Instead, the defendant concludes that the government's admission concerning its direct evidence concerning the defendant's leadership means that the evidence stemming from the daycare "robbery is merely cumulative and therefore excludable under Rule 403." (*Id.*)

Relying on *United States v. Ojomo*, 332 F.3d 485, 489 (7th Cir. 2003), the defendant takes issue with the government's assertion that the daycare robbery is "inextricably related" to the Ghetto Boys drug conspiracy. (*Id.* ¶ 16.) For prior criminal acts or misconduct to satisfy the inextricably related doctrine, the defendant offers that it must "complete the story of the crime on trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of the charged crime." (*Id.*) As a result, the defendant argues that "[t]he 'story' of the crime on trial involves a drug conspiracy. The [daycare] robbery . . . has nothing to do with drugs, drug

10

money, or the acquisition of guns." (*Id.*) Because the government does not allege that the offenders committed the robbery in furtherance of the drug conspiracy, "[p]recluding its admission in no way creates any sort of chronological or conceptual void in the story of the drug conspiracy." (*Id.*)

Additionally, the defendant submits that the lack of relationship between the daycare armed robbery and the drug conspiracy means that under Rule 403 the court must not allow the jury to know that the defendant "may have engaged in other unrelated criminal activity." (*Id.* ¶ 17.) Similarly, the defendant argues that the government's plan to offer evidence concerning the defendant's alleged involvement in the attempted armed robbery of ATM funds to demonstrate the defendant's leadership in the Ghetto Boys is cumulative and excludable under Rule 403. (*Id.* ¶ 18.) Likewise, this evidence, the defendant notes, attempts to "divert the jury's focus" from the drug conspiracy to other unrelated criminal activity, creating "real danger that the jury would render a guilty verdict based on" matters other than the charged drug conspiracy. (*Id.*)

According to the defendant, the government wants to introduce evidence of the attempted ATM robbery to support its assertion that the defendant disciplined Charles Bishop because the robbery failed. (*Id.* ¶ 19.) But during Bishop's debriefing, the defendant highlights that Bishop never linked the alleged punishment to the attempted ATM robbery. (*Id.*)

As to the evidence of the alleged Johnson robbery, the defendant reiterates that the government's intended use, to demonstrate his leadership in the Ghetto Boys, is cumulative and unnecessary. (*Id.* ¶ 20.) In light of the government's concession that the purpose for introducing this evidence is not to focus on the robbery, but on the recorded

11

conversation between the defendant, Johnson and Chachere, the defendant offers that the "government can simply introduce both portions of the tape recorded conversations it deems significant without alluding to the alleged robbery itself." (*Id.* ¶ 21.) Lastly, with respect to the Reynolds burglary, the defendant reiterates the arguments he offered in his motion. (*Id.* ¶ 22.)

## Discussion

Counts One, Two, Five, Six and Seven of the ten-count indictment pertain to the defendant. The first count charges the defendant with "knowingly and intentionally conspiring with others to distribute and possess with intent to distribute controlled substances." (*Id.*) Paragraph three of that count clarifies that the conspiracy consisted of individuals with a membership in the Ghetto Boys and their associates. (*Id.* at 2.) In addition to purchasing the drugs from dealers, paragraph four of Count One states that the Ghetto Boys "burglarized the residences and stash houses of other drug dealers to obtain drugs and cash[,] . . . robbed other drug dealers of their drugs, cash and other valuables[,] . . . extorted money, drugs, and other valuables from other drug dealers[,] . . . [and] performed acts of violence to further the drug trafficking of other drug dealers in exchange for drugs and cash." (*Id.*)

To maintain solidarity and secrecy within the organization, paragraph six of Count One alleges that the Ghetto Boys encouraged members and associates to participate "in criminal acts, including acts of violence." (*Id.*) Paragraph seven of Count One alleges that "[t]he Ghetto Boys obtained firearms for use by the members of the gang to protect themselves and the drugs, cash, and other valuables they obtained for use in the

12

organization's drug trafficking activities . . . through various means, including . . . robberies, burglaries, . . .." (*Id.* at 3.)

The second count alleges that the defendant "knowingly used firearms during and in relation to a drug trafficking crime" charged in Count One. (*Id.* at 4.) Counts Five and Six purport that on the same day the defendant knowingly and intentionally distributed fifty (50) grams or more of a mixture containing cocaine base in the form of crack cocaine (Count Five) and five (5) grams or more of a mixture containing cocaine base in the form of crack cocaine (Count Six). (*Id.* at 7-8.) Lastly, Count Seven claims that during the offense charged in Count Six, the defendant knowingly used and carried a firearm. (*Id.* at 9.)

Given the indictment's sweeping language and the general descriptions of the acts alleged, *any* offense that allegedly involved the defendant, arguably bears a relationship to the charges. Therefore, this motion requires the court to view the seven separate incidents identified by the defendant in isolation to determine if there is a relationship between the offense and the conspiracy, then, if such a relationship exists, to determine the extent of the relationship. Next, the court would have to decide whether such evidence is admissible under Rule 404(b)[1] and if it is, the court would still need to consider the mandates of Rule 403

---

[1] Rule 404(b) governs the admission of evidence stemming from other crimes, wrongs or acts. FED. R. EVID. 404(b). The rule provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

*Id.*

before ruling whether the government can present evidence regarding these incidents.[2] However, because the court cannot view the seven incidents in isolation and must consider them in light of the indictment and the testimony presented at trial, the defendant's motion cannot be granted at this stage. This decision should not be construed as a final decision respecting the admissibility of evidence on the incidents the government cited in its Rule 404(b) notice or those with which the defendant takes issue. Lastly, to further assist the court in addressing issues that may be raised at trial, the court invites the government to file a supplemental trial brief by 5:00 p.m., on Friday, July 29, 2005.

Now, therefore,

IT IS ORDERED that the defendant's Motion in Limine to Exclude From Evidence at Trial "Other Evidence" Pursuant to Rule 404(b) (Doc. # 245) is denied without prejudice.

Dated at Milwaukee, Wisconsin, this 14th day of July, 2005.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge

---

[2] Rule 403 concerns the exclusion of relevant evidence on the grounds of prejudice, confusion, or waste of time. FED. R. EVID. 403. The rule states that

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Id.* While Rule 404(b) allows the admission of evidence of other crimes, wrongs or acts for limited purposes, these limitations must still satisfy the test delineated in Rule 403. In other words, the prosecution's desire to offer evidence of other crimes, wrongs, or acts for purposes of demonstrating the accused's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, does not mean that such relevant evidence will withstand the demands of Rule 403.

14

Case 2:02-cr-00066-PP    Filed 07/14/05    Page 14 of 14    Document 298